UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
GERALD GODEC, On Behalf of Himself : CASE NO. 1:10-CV-224
and All Others Similarly Situated, :
:
Plaintiff, :
:
v. : OPINION & ORDER
: [Resolving Doc. Nos. 78, 102, 104, 118, 139]
BAYER CORPORATION, *et al.*, :
:
Defendants. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Gerald Godec moves to certify as a class action his breach-of-express-warranty claim against Defendants Bayer Corporation and Bayer Healthcare LLC (hereinafter, collectively, Bayer). [Doc. 102.] Bayer opposes the motion.[1]

---

[1] This lawsuit was originally filed by George McKinney, who, on April 18, 2011, moved to certify it as a class action. [Doc. 78.] Generally, McKinney's claim was that Bayer had warranted certain multivitamin products containing selenium as promoting prostate health, when in fact those products did not promote prostate health. On June 16, 2011, McKinney moved—by way of a proposed amended complaint—to substitute Godec as the putative class representative. [Doc. 95.] The Court permitted the substitution, [Doc. 108], and, on July 5, 2011, Godec filed an amended complaint, [Docs. 111, 119.] As promised, the amended complaint replaced McKinney with Godec, but it also pleaded a new fact: that lycopene—another ingredient in the multivitamins—also did not promote prostate health. [Doc. 111.] Bayer moves to strike the amended complaint, arguing that Godec was not permitted any change except "mere[] substituti[on of] one named class representative for another." [Doc. 118, at 3.] And, Bayer says, it is unduly prejudiced by the amendment because the newly pleaded fact makes out an additional warranty claim.

The Court disagrees. As an initial matter, McKinney's (now Godec's) claim has always been that Bayer's vitamins do not work as promised, specifically, that the vitamins purport to promote prostate health but do not. That claim does not depend on *which* ingredient fails to promote prostate health. If anything, it depends on *every* ingredient's failure to promote prostate health. So it is hard to see how Godec's identification of lycopene, or selenium, or any of the multivitamins' many other ingredients "makes broad new allegations" or "rais[es] new issues." [Doc. 118, at 2-3.]

Case No. 1:10-CV-224
Gwin, J.

I.

From 2005 through 2009, Bayer sold, among other things, multivitamins in Ohio. Two brands of those multivitamins are at issue in this case: (1) One-A-Day Men's Health Formula ("Men's Health Formula"), that Bayer sold in Ohio from 2005 through 2009; and (2) One-A-Day Men's 50+ Advantage ("Men's 50+ Advantage"), that Bayer sold in Ohio from 2007 through 2009.

In 2006, Godec—a long-time multivitamin purchaser—switched from his regular brand of multivitamin to Bayer's Men's Health Formula. Godec says that he made the switch because the packaging for the Men's Health Formula vitamins indicated that they were specially-formulated to promote prostate health, a particular concern of Godec's. For example, during most of 2006, the packaging for Men's Health Formula vitamins (1) described the vitamins as a "Complete Multivitamin for Men Plus More to Support," among other things, a "HEALTHY PROSTATE," (2) noted that the vitamins would "Support Prostate Health with a unique combination of Lycopene, Selenium, Vitamin E, and Zinc," (3) listed lycopene and selenium as "Key Ingredients" for a "HEALTHY PROSTATE," and (4) asked prospective purchasers whether they "kn[e]w that prostate health [was] among the top health concerns for men over 35," reassuring that "One-A-Day Men's Health Formula is a complete multivitamin plus Lycopene, an antioxidant which studies have linked to prostate health." [Doc. 91-1.]

Godec—who also remembered seeing advertisements touting the prostate-health benefits of

---

And, in any event, "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court finds that Godec's amendment was not "brought in bad faith[ or] for dilatory purposes." *See Colvin v. Caruso*, 605 F.3d 282, 294 (6th Cir. 2010). Nor does it "result[] in undue delay or prejudice" to Bayer. *See id.* Indeed, any risk of prejudice is offset by the trial date: April 16, 2012. That's five months away. Accordingly, the Court **DENIES** Bayer's motion to strike the amended complaint, [Doc. 118], and **DENIES** Bayer's motion to strike the amended motion for class certification, [Doc. 104.] McKinney's original motion for class certification, [Doc. 78], is **DENIED** at moot.

Case No. 1:10-CV-224
Gwin, J.

Men's Health Formula—purchased and consumed the vitamins for more than three years. Then, in 2009, he read a news story suggesting that Bayer's vitamins did not promote prostate health. He stopped buying Bayer's vitamins, returned to his old brand, and joined this lawsuit.

Godec's claim—the one he seeks to certify for class treatment—is that Bayer created (and breached) an express warranty with the purchasers of its specially-formulated Men's vitamins when it promoted them as supporting prostate health. According to Godec, those vitamins do not in fact support prostate health.

He proposes a class of:

> All persons who purchased One A Day Men's Health Formula and/or One A Day Men's 50+ Advantage Vitamins ("Men's Vitamins") in the State of Ohio, from the date Men's Vitamins were first sold in Ohio to December 31, 2009 ("Class").

[Doc. 102, at 1.]

Because Godec made all of his vitamin purchases in Ohio, and because the proposed class is limited to persons who made purchases in Ohio, the parties apparently agree that every class member's claim arises under Ohio law. Thus, for Godec to prevail on his individual claim for breach of express warranty, he will have to prove (1) a warranty existed; (2) Bayer's vitamins failed to perform as warranted; and (3) that he was injured by their failure. *See St. Clair v. Kroger Co., 581 F. Supp. 2d 896, 902 (N.D. Ohio 2008)*. In order to pursue his claim as a class action, however, he also must satisfy the requirements of Federal Rule of Civil Procedure 23.

II.

"One . . . member[] of a class may sue . . . as [a] representative part[y] on behalf of all members only if:

-3-

Case No. 1:10-CV-224
Gwin, J.

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative part[y] are typical of the claims or defenses of the class; and
>
> (4) the representative part[y] will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a).

In addition, "the court [must] find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[2]

Before the Court can certify a proposed class, it must conduct "a rigorous analysis" of the plaintiff's claims and their fitness for class-wide resolution. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). A decision on class certification is not, however, an adjudication of the merits of the case. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). Rather, it is merely a determination "whether the requirements of Rule 23 are met." *Id.*

Nevertheless, before turning to the requirements of Rule 23, and at the risk of taking matters out of order, the Court identifies a glaring problem with the proposed class: Godec never purchased Bayer's Men's 50+ Advantage vitamins; he purchased only Men's Health Formula vitamins. [Doc. 126-1.] A class representative must himself have standing to assert the claim he seeks to certify. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class

---

[2] Federal Rules of Civil Procedure 23(b)(1) & (2), which provide two alternative bases for maintaining a class action, are not at issue here.

Case No. 1:10-CV-224
Gwin, J.

'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). Because Godec never purchased Men's 50+ Advantage, he has suffered no injury from any breach of any warranty with regard to that product. Accordingly, he lacks standing to make claims regarding the Men's 50+ Advantage vitamins, and the Court DENIES the motion to certify a class containing persons who purchased only Men's 50+ Advantage vitamins.[3]

The Court will, however, consider whether it can certify a narrower class than the one Godec seeks, addressing Rule 23's requirements in turn.

### a. Numerosity

From 2005 through 2009, Bayer sold between 100,000 and 150,000 units of Men's Health Formula in Ohio each year. [Doc. 109-50.] Even assuming that some putative class members were repeat purchasers of the vitamins, the Court finds that joinder of all unique purchasers would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). Bayer does not argue otherwise.[4] Accordingly, the class is sufficiently numerous.

### b. Commonality

Class "claims must depend upon a common contention," and "[t]hat common

---

[3] Although the Court must not inquire into the merits of Godec's claim, his failure to purchase Men's 50+ Advantage vitamins renders him, at minimum, inadequate to represent those who purchased only Men's 50+ Advantage vitamins. *See* Fed.R. Civ. P. 23(a)(4).

[4] Bayer does argue that the proposed class is overbroad, pointing out that some purchasers' claims may be barred by the relevant statute of limitations and that any remaining purchasers would, at minimum, require numerous subclasses. *See* [Doc. 91, at 35-36.] Even if Bayer is correct, however, and the remaining purchasers are divided into "ten different . . . subclasses," *id.*, each subclass would easily satisfy the numerosity requirement.

Case No. 1:10-CV-224
Gwin, J.

contention . . . must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Godec says four issues are common among the putative class members: "(1) whether the Men's Vitamins' standardized advertising and labeling established a warranty; (2) the promise made by that warranty; (3) whether Bayer breached the warranty by not providing the Men's Vitamins that conformed to the warranty; and (4) the appropriate measure of relief." [Doc. 78-1, at 21.]

To determine whether any of these issues are "capable of classwide resolution," the Court looks to the requirements of Ohio warranty law. In Ohio,

> Express warranties by the seller are created as follows:
>
> (1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Ohio Rev. Code § 1302.26(A) (implementing U.C.C. § 2-313 (1961)).

As Godec sees it, Bayer—by its advertising and packaging of Men's Health Formula—promised each putative class member that the vitamins would promote prostate health. Furthermore, Godec says, because the prostate-health message consistently and uniformly appeared in advertising and on the packaging, that promise became "part of the basis of the bargain" between Bayer and each putative class member. The Court largely agrees.

During the class periods, the various packagings for Men's Health Formula vitamins all contain similar prostate-health statements. *See* [Doc. 91-1.] The packaging itself, including its content and arrangement, can be proved on a classwide basis. And therefore, whether the packaging

-6-

Case No. 1:10-CV-224
Gwin, J.

contains "description[s] of the goods" or "affirmation[s] of fact or promise made by [Bayer] to the [class] which relate[] to the goods," can also be proved on a classwide basis.

Similarly, whether any of those promises, statements of fact, or descriptions of the goods became "part of the basis of the bargain" can be proved on a classwide basis. The phrase "basis of the bargain"—as used in Uniform Commercial Code § 2-313 (and therefore Ohio Rev. Code § 1302.26(A))—appears to have "caused significant legal confusion" in Ohio. *Norcold, Inc. v. Gateway Supply Co.*, 798 N.E.2d 618, 623 (Ohio Ct. App. 2003). In particular, courts, and the parties in this case, disagree with regard to whether a buyer must rely on the seller's representation for that representation to become a basis of the bargain. Comment 3 to Section 2-313, clears things up:

> The present section deals with affirmations of fact by the seller, descriptions of the goods or exhibitions of samples, *exactly as any other part of a negotiation which ends in a contract is dealt with*. No specific intention to make a warranty is necessary if any of these factors is made part of the basis of the bargain. In actual practice affirmations of fact made by the seller about the goods *during a bargain* are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact.

U.C.C. § 2-313 cmt. 3 (1961) (emphasis added).

Thus, the "made part of the basis of the bargain" concept *expands* the realm of representations that may give rise to an express warranty to *include* certain pre-contract statements that do not appear in the final agreement. When the representation is made "during a bargain," "no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement." *Id.*; *see Norcold*, 798 N.E.2d at 623-24. In contrast, when the representation is made other than "during a bargain"—say, in a television or radio advertisement—whether the

Case No. 1:10-CV-224
Gwin, J.

representation is part of the parties' agreement depends on the factfinder's examination of "the circumstances surrounding the transaction, the reasonableness of the buyer in believing the seller, and the reliance placed on the seller's statements by the buyer." *Price Bros. Co. v. Philadelphia Gear Corp.*, 649 F.2d 416, 422 (1981) ("[A]ny statements not incorporated into the written sales agreement must be shown to be part of the bargain between the parties before they can be recognized as express warranties.").

There is nothing unusual about this rule. Ordinarily, Ohio enforces agreements by their terms. *See Warmack v. Arnold*, No. C-100718, 2011 WL 5067203, at *5 (Ohio Ct. App. Oct. 26, 2011) (per curiam) ("Where a contract's terms are clear and unambiguous, a court need not go beyond the plain language of the agreement to determine the rights and obligations of the parties."); *see also Price Bros. Co.*, 649 F.2d at 422 ("Express warranties under the Ohio Uniform Commercial Code (UCC) are contractual in nature."). At the same time, there often will be a dispute over which terms have been incorporated into the final agreement. And in the express warranty context, comment 3 suggests, statements made "during a bargain" become part of the basis of that bargain, that is, part of the final agreement. U.C.C. § 2-313 cmt. 3; *see Norcold*, 798 N.E.2d at 623-24; *accord Grupo Condumex, S.A. v. SPX Corp.*, No. 3:99CV7316, 2008 WL 4372678, at *2 (N.D. Ohio Sept. 19, 2008) (unpublished) ("[A]s to a claim of breach of warranty [under Michigan law], the elements of proof are those for a claim for a breach of any other contractual obligation—namely, that a contract existed between the parties ans that a breach of one or more of the contractual terms occurred. I see no . . . reason why the law should require something more (*i.e.*, reliance) where the provision at issue is a warranty.").

Of couse, rather than negotiate with individual consumers face-to-face, Bayer usually

Case No. 1:10-CV-224
Gwin, J.

"bargain[s]" from afar. So it ships its products to retail outlets with its offer to consumers printed right on the package, *e.g.*, "60 TABLETS," or "SUPPORTS PROSTATE HEALTH." *See* [Doc. 91-1.] Thus, when a consumer selects a Bayer product from the shelf, carries it to the cashier, and pays for it, the consumer carries with him the written terms of his agreement with Bayer. Those terms become part of the basis of the bargain by virtue of their appearance "during a bargain," not because of any individual consumer's reliance. Because this is true for every purchaser, and because the packaging was uniform across the class,[5/] whether the prostate-health message on the packaging gave rise to an express warranty is a common question that can be resolved with common evidence.[6/]

It follows that at least two of the remaining common issues Godec identifies—the scope of any warranty and whether it was breached—are also common questions capable of classwide resolution. The scope of any warranty, like its existence, can be determined from the packaging. And whether Bayer breached any warranty, that is, whether it delivered a product that did not conform to its description, is a scientific question common to the class members.

Accordingly, the Court finds that there is a "common contention" in the putative class members' suit "capable of classwide resolution," and that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*

---

[5/] The Court agrees with Bayer that variations in the packaging over the class period must each be considered separately because, to the extent the packaging changed, the existence and terms of any warranty may also have changed. Accordingly, the Court will divide the class into subclasses corresponding to the time periods during which the vitamins' packaging went unchanged.

[6/] The same may not be true with respect to any advertisements Godec may have seen prior to purchasing Bayer's vitamins. Unlike the statements found on the packaging, which are akin to the terms of a written agreement, Bayer's radio and television advertisements likely reached consumers far from the store shelves and perhaps well before any consumer made the decision to purchase. Furthermore, at this point it is not clear the extent to which individual class members heard or viewed the advertisements. Whether those advertisements could, therefore, be "w[oven] . . . into the fabric of the agreement" between Bayer and the class on a classwide basis remains to be seen. Nevertheless, because the proposed class is limited to purchasers, all class members have, at minimum, a claim with regard to the packaging. Accordingly, the Court need not resolve at this stage the extent to which Bayer's advertising is relevant to any claim.

Case No. 1:10-CV-224
Gwin, J.

*Stores, Inc.*, 131 S. Ct. at 2551.

c. Typicality

"A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quotation marks omitted). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998).

Godec purchased Bayer's Men's Health Formula vitamins from "spring of 2006 until the late summer or early fall 2009." [Doc. 102-1.] Both outside and during that period the packaging for Bayer's Men's Health Formula vitamins went through a number of design changes. The design of the first package Godec purchased—in the spring of 2006—had been in use since September 2005. [Doc. 91-1.] The design of the last package Godec purchased—in early fall 2009, at the latest—was used through November 2009. *Id.* Godec's claim could be typical only of those putative class members whose purchases fall within those dates. Accordingly, the Court trims the putative class period such that it begins in September 2005 and ends in November 2009.

Godec's claim is typical of the proposed class, as modified by the Court. As explained above, the remainder of the class claim is that the vitamins' packaging—which was uniform across the class (if not the class period)—gave rise to an express warranty between Bayer and the putative class members. And there is nothing suggesting that Godec's purchases were in any way unusual or atypical.

Case No. 1:10-CV-224
Gwin, J.

Furthermore, all but one of Bayer's planned defenses against Godec the individual apply equally to the putative class. For example, while Bayer makes much of the fact that Godec's former (and now current) brand of vitamin is more expensive than Men's Health Formula, that does not mean, as Bayer insists, that Godec is an atypical, "no damages" representative. Rather, as Bayer concedes, "[t]he appropriate measure of damages for breach of express warranty is the difference between the value of the product as represented and its value as received." [Doc. 91, at 31 (citing *Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Products Inc.*, No. 2:02-cv-1288, 2007 WL 894833, at \*31 (S.D. Ohio Mar. 22, 2007) (unpublished)).] So if Bayer's vitamins did not work as promised, and Godec proves it, then Godec (along with the reset of the class) can recover the "difference between the value of the product as represented and its value as received." Except perhaps to the extent that it may help in determining the value of Bayer's vitamins as represented or received, the cost of another vitamin is simply not part of the calculus.[7/]

Nevertheless, one of Bayer's planned defenses applies to some of the class members but not to Godec. Specifically, Bayer plans to assert a four-year-statute-of-limitations defense that it says will apply only to consumers who purchased its vitamins prior to February 2, 2006. *See* [Doc. 91, at 36.] Because Godec did not purchase any Bayer vitamins until the spring of 2006, this defense would not apply to him and Godec is not therefore typical of class members whose only purchases

---

[7/]Bayer repeats a similar argument with respect to other proposed class members who, Bayer says, are likely to be uninjured. For example, there is evidence that women also purchased the vitamin because it did not contain iron. And surely, Bayer argues, no woman can claim that she was injured by the vitamins' failure to promote prostate health. Furthermore, Bayer points out, many men bought the vitamin for reasons unrelated to its prostate-health benefits.

This argument misses the mark. An action for breach of express warranty is action to recover value represented less value received. That presents a valuation problem, sure, but it's a valuation problem that is common to the class: What is the difference in value between a vitamin that promotes prostate health and one that does not? Godec alleges that he—along with *all* the other class members—paid a premium for vitamins that supported prostate health. If he is correct, then *every* purchaser of those vitamins—women included—paid that same premium. Accordingly, every purchaser is equally damaged.

-11-

Case No. 1:10-CV-224
Gwin, J.

took place prior to February 2, 2006. Accordingly, the Court further trims the proposed class period to a period that begins February 2, 2006.

### d. Adequacy

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between the named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citations and quotation marks omitted).

The Court has carefully tailored the proposed class to eliminate otherwise members whom Godec was inadequate to represent. Those who remain purchased the same vitamins in the same packages. They have the same claims and are, for the most part, subject to the same defenses. Furthermore, the Court finds no conflicts of interest between Godec and the remainder of the class. Finally, the proposed "class counsel are qualified, experienced and generally able to conduct the litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000); *see* [Docs. 79, 80, 81, 82.][7/] Accordingly, the Court finds that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

### e. Predominance

"[Q]uestions of law [and] fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). As explained above, the "heart" of this case is common to the class members. *See Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). The core issues: Existence, scope, and breach of any warranty,

---

[7/]Bayer does not argue otherwise.

-12-

Case No. 1:10-CV-224
Gwin, J.

are common issues, the resolution of which will rapidly advance the conclusion of this litigation. Should Bayer prevail on any of those issues, the case will end. And if the class succeeds on all three, all that will remain are Bayer's defenses and the issue of damages.[8]

Furthermore, while Bayer may have defenses applicable to some class members and not others, those defenses do not predominate. While Bayer hypothesizes that a large number of class members likely are estopped from recovery because they knew that the vitamins did not prevent prostate cancer, the Court does not agree. As an initial matter, the vitamins' packaging stated generally that they supported prostate health. Therefore, even if many consumers knew that the vitamin would not prevent prostate cancer outright, it does not follow that droves of consumers believed Bayer's more general prostate-health claim to be false. Bayer gives itself too little credit; the overwhelming majority of consumers probably trusted Bayer—a well-known company—and believed that there was some prostate-health benefit from taking the vitamins. Indeed, Bayer alternatively maintains that there was such a benefit, and it may be right. In any event, to the extent Bayer has individualized defenses, it is free to try those defenses against individual claimants.

### f. Superiority of a Class Action

"[A] class action is superior to other available methods for fairly and efficiently adjudicating th[is] controversy." *See* Fed. R. Civ. P. 23(b)(3). First, class members have little interest "in individually controlling the prosecution . . . of separate actions." Fed. R. Civ. P. 23(b)(3)(A). Each class member's claim—a few dollars at most—is not worth the expense and effort of a separate litigation. Furthermore, there will be few "difficulties in managing [this case as] a class action." Fed

---

[8] And, as explained above, the issue of damages, though it will require individualized proof of purchases, will not require individualized inquiries into the value of the vitamins.

Case No. 1:10-CV-224
Gwin, J.

are common issues, the resolution of which will rapidly advance the conclusion of this litigation. Should Bayer prevail on any of those issues, the case will end. And if the class succeeds on all three, all that will remain are Bayer's defenses and the issue of damages.[8]

Furthermore, while Bayer may have defenses applicable to some class members and not others, those defenses do not predominate. While Bayer hypothesizes that a large number of class members likely are estopped from recovery because they knew that the vitamins did not prevent prostate cancer, the Court does not agree. As an initial matter, the vitamins' packaging stated generally that they supported prostate health. Therefore, even if many consumers knew that the vitamin would not prevent prostate cancer outright, it does not follow that droves of consumers believed Bayer's more general prostate-health claim to be false. Bayer gives itself too little credit; the overwhelming majority of consumers probably trusted Bayer—a well-known company—and believed that there was some prostate-health benefit from taking the vitamins. Indeed, Bayer alternatively maintains that there was such a benefit, and it may be right. In any event, to the extent Bayer has individualized defenses, it is free to try those defenses against individual claimants.

### f. Superiority of a Class Action

"[A] class action is superior to other available methods for fairly and efficiently adjudicating th[is] controversy." *See* Fed. R. Civ. P. 23(b)(3). First, class members have little interest "in individually controlling the prosecution . . . of separate actions." Fed. R. Civ. P. 23(b)(3)(A). Each class member's claim—a few dollars at most—is not worth the expense and effort of a separate litigation. Furthermore, there will be few "difficulties in managing [this case as] a class action." Fed

---

[8] And, as explained above, the issue of damages, though it will require individualized proof of purchases, will not require individualized inquiries into the value of the vitamins.

Case No. 1:10-CV-224
Gwin, J.

R. Civ. P. 23(b)(3)(D). The remaining considerations being neutral in this case, *see* Fed. R. Civ. P. 23(b)(3)(B) & (D), the Court finds that a class action is superior to any alternatives.

III.

For these reasons, the Court **GRANTS** and **DENIES** in part Godec's motion to certify his breach-of-express-warranty claim as a class action. [Doc. 102.] The Court **CERTIFIES** the following class:

> All persons who purchased One-A-Day Men's Health Formula Vitamins ("Men's Vitamins") in the State of Ohio, from February 2, 2006, through November 30, 2009 ("Class").

That class will be divided into five subclasses, *see* Fed. R. Civ. P. 23(c)(5), each one corresponding to a time period in which the packaging for Men's Health Formula vitamins went unchanged:

> All persons who purchased Men's Vitamins in the State of Ohio, from February 2, 2006, through November 30, 2006 ("Subclass A").
>
> All persons who purchased Men's Vitamins in the State of Ohio, from December 1, 2006, through June 30, 2007 ("Subclass B").
>
> All persons who purchased Men's Vitamins in the State of Ohio, from July 1, 2007, through January 31, 2008 ("Subclass C").
>
> All persons who purchased Men's Vitamins in the State of Ohio, from February 1, 2008, through August 31, 2008 ("Subclass D").[9]
>
> All persons who purchased Men's Vitamins in the State of Ohio, from September 1, 2008, through November 30, 2009 ("Subclass E").

Furthermore, the Court, having considered the factors listed in Rule 23(g), **APPOINTS** Blood Hurst & O'Reardon, LLP, Climaco, Wilcox, Peca, Tarantino & Garofoli Co., L.P.A., Scott

---

[9] The record does not appear to contain a sample of the packaging from this time period. *See* [Doc. 91-1.]

Case No. 1:10-CV-224
Gwin, J.

Kalish Co., LLC, and Piscitelli Law Firm as co-lead class counsel. *See* Fed. R. Civ. P. 23(c)(1)(B) & (g)(1). These firms have identified and investigated the claims in this case and, taken together, have extensive class-action experience, including in consumer-protection cases. *See* [Docs. 79, 80, 81, & 82]; Fed. R. Civ. P. 23(g)(1)(A)(i) & (ii). In addition, they have demonstrated a knowledge of the applicable law and are "committed to" "devot[ing] significant resources and time to the prosecution of this matter." *See* [Docs. 79, 80, 81, & 82]; Fed. R. Civ. P. 23(g)(1)(A)(iii) & (iv). The Court cautions, however, that in the event the class recovers on any claim and to the extent it is otherwise appropriate, the Court will award only a reasonable attorney's fee. Of that class counsel should be mindful in its staffing of this matter.

Finally, the Court **DENIES** as moot Godec's motion to strike Bayer's supplemental declarations, [Doc. 139.]

IT IS SO ORDERED.

Dated: November 11, 2011         s/     *James S. Gwin*
                                 JAMES S. GWIN
                                 UNITED STATES DISTRICT JUDGE