UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
GERALD GODEC, On Behalf of Himself   :   CASE NO. 1:10-CV-224
and All Others Similarly Situated,   :
:
Plaintiff,   :
:
v.   :   OPINION & ORDER
:   [Resolving Doc. No. 149]
BAYER CORPORATION, *et al.*,   :
:
Defendants.   :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this state-wide class action, Plaintiff Gerald Godec sues Defendants Bayer Corporation and Bayer Healthcare LLC (hereinafter, collectively, Bayer). He makes a single class claim for breach of express warranty. Generally, the class claim is comprised of three common allegations: (1) that the packaging for Bayer's One-A-Day Men's Health Formula ("Men's Health") vitamins gave rise to an express warranty that those vitamins promote prostate health; (2) that Bayer breached the express warranty when it delivered a product that does not promote prostate health; and (3) that each of the class members was damaged when he or she paid for a more valuable (*i.e.*, expensive), prostate-health-promoting product, but received a less valuable, non-prostate-health-promoting product.

Bayer now moves for summary judgment against the class and against Godec as an

-1-

Case No. 1:10-CV-224
Gwin, J.

individual. Generally, Bayer argues that even if the packaging did give rise to a warranty (which Bayer disputes), and even if Bayer breached that warranty by delivering a nonconforming product (which Bayer also disputes), there is no evidence that any class member was damaged by that breach. *See* [Docs. 149, 154.] Moreover, Bayer says, Godec has waived his individual claim. *See* [Docs. 149, 154.] Godec and the class oppose Bayer's motion. *See* [Doc. 152.] For the following reasons, the Court denies Bayer's motion.

I.

As this Court previously observed, *see* [Doc. 146], under Ohio law, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." Ohio Rev. Code § 1302.88. Bayer's motion for summary judgment argues that the class cannot prove any damages under § 1302.88 because the value of the vitamins that were accepted is the same as the value of the vitamins as promised. But before turning to the substance of Bayer's motion, and in an effort to bring some clarity to the issues remaining in this case, the Court pauses to address Godec and the class's continuing suggestion that this case may present "special circumstances" warranting "full purchase price recovery." [Doc. 152, at 4.]

It is true that in some "special circumstances" plaintiffs who succeed on a breach-of-warranty claim can receive a refund of the purchase price. Ohio Rev. Code § 1302.88. "Indeed, Plaintiff has always maintained . . . that full purchase price recovery is available in this case." [Doc. 152, at 4.] The Court does not agree. As Bayer correctly points out, cases presenting special circumstances "involve the sale of personal property with such factual elements as commercial use, a loss of the

-2-

Case No. 1:10-CV-224
Gwin, J.

profits by the buyer, and a situation where the buyer communicated to the seller at the time of the sale sufficient facts to make it apparent that damages such as the loss of profits subsequently claimed were within the reasonable contemplation of the parties, or involved a loss such as food spoilage because of a breach of warranty constituting a malfunction of a home appliance, or other direct expenses or monetary losses resulting from the breach." *Eckstein v. Cummins*, 347 N.E.2d 549, 551 (Ohio Ct. App. 1975). This case presents none of these special circumstances. In other words, this case involves no basis for a jury to conclude that the appropriate measure of damages is different than the usual measure: "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted," Ohio Rev. Code § 1302.88.

The circumstance Godec offers as "special"—that he would not have purchased Bayer's vitamins had he "known the truth about Bayer's prostate promises," [Doc. 152, at 7]—is not a "special circumstance" under Ohio warranty law and is otherwise problematic because it is not a "damages model that functions on a class-wide basis," *Rodney v. Northwest Airlines*, 146 F. App'x 783, 791 (6th Cir. 2005). If the class members were to attempt to proceed under this theory of damages—one that depends on inquiries into the value that *each purchaser* assigned to the prostate-health promise—then some class members, *e.g.*, Godec, might have damages, while others, *e.g.*, women, who obviously purchased the vitamins for reasons other than prostate health, *see* [Doc. 146, at 11 n.7], would not. Damages would then depend on highly-individualized inquiries into the circumstances of each purchase, rendering class treatment inappropriate.

At the time of class certification, the Court concluded that damages in this case might be subject to proof on a class-wide basis, reasoning that if Bayer's Men's Health vitamins (including

Case No. 1:10-CV-224
Gwin, J.

some promised prostate benefit) were more expensive than vitamins making no such promise, then each purchaser was equally damaged in the amount of the increased price he or she paid.[1/] The Court continues to believe that this is the only way damages can be proved on a class-wide basis. With that in mind, the Court turns to Bayer's argument that the class has insufficient evidence that Bayer's Men's Health vitamins were more expensive than the same vitamins but without any prostate claim.

II.

In support of its argument that there is insufficient evidence for a jury to find that the class members were damaged by any breach, Bayer shows (1) that when, in 2002, Bayer first began to include a prostate-health message on its "Men's" vitamins, it "did not increase the price of the product or charge a premium for the addition of prostate health claims"; and (2) that when, in 2009, Bayer removed the prostate-health claim from its "Men's Health" vitamins, "it did not decrease the price of" the vitamins. [Doc. 149-2.] Furthermore, Bayer shows that it priced a similar vitamin—One-A-Day Maximum (which never included a prostate-health claim)—exactly the same as it priced Men's Health vitamins. *Id.* Accordingly, Bayer says, summary judgment is appropriate because there is no "genuine dispute" that the class members were not charged any premium for the Men's Health prostate message. Fed. R. Civ. P. 56(a).

In response, Godec and the class point to two items of evidence that, they say, demonstrate that Bayer increased the price of Men's Health vitamins as a result (or partly as a result) of its prostate-health message. First, they offer a May 2006 Bayer Consumer Care Division presentation

---

[1/]This is not, however, the only or even the primary question common to the class. *See* [Doc. 146, at 5-9.]

Case No. 1:10-CV-224
Gwin, J.

recommending an increase in the price of One-A-Day vitamins. *See* [Doc. 160-3.][2/] The presentation recommends a "4% increase" in the price of all Bayer vitamin products beginning September 1, 2006, and provides "Trade Rationale" justifications for the increases on several of those products. [Doc. 160-3.] The justification Bayer offered for the increased price in Men's Health vitamins was the "[a]ddition of selenium to help reduce the risk of prostate health." *Id.* Bayer also offered justifications for price increases on two of its other products, One-A-Day Women's ("Increase in calcium to better support strong bones") and All Day Energy ("Complete multivitamin with B vitamins and Guarana to help improve physical and mental energy"). *Id.* On September 1, 2006, as the presentation recommended, Bayer increased the price of all ten of its One-A-Day vitamin lines, including Men's Health. *See* [Doc. 149-2.]

Bayer raised the price of its Men's Health vitamins and apparently advertised this increase as justified by prostate health benefits. When Bayer considered whether to increase the price of its Men's Health vitamins it internally assigned some value to the "new news and claim[]" that its Men's Health vitamins promote prostate health. [Doc. 160-3.] But Bayer contemporaneously increased the prices of *all ten* of its vitamin products by four percent, even though Bayer gave a "Trade Rationale" justification for only the Men's, Women's, and All Day Energy vitamin price increases. That supports Bayer's argument that the periodic increases in the prices of its Men's Health vitamins had nothing to do with any prostate-health claims but were driven instead by other factors, *e.g.*, a desire to be "[c]onsistent with divisional timing for increase on analgesics,"

---

[2/]Bayer objects that this document was not properly filed in opposition to its motion for summary judgment. *See* [Doc. 161, at 9-14.] That may be true. Nevertheless, Godec and the class filed it in opposition to Bayer's motion to exclude the opinion of Godec and the class's damages expert, Jeffrey Firestone, *see* [Docs. 155; 160], and Bayer's motion to exclude Firestone's opinion was made part of its motion for summary judgment, *see* [Doc. 149, at 17 n.6.] Furthermore, Bayer has had and taken the opportunity to respond to this evidence. *See* [Doc. 161, at 9-14.]

Case No. 1:10-CV-224
Gwin, J.

"[i]ncreasing transportation and distribution costs," and costs associated with "[f]uture new products and claims [that] will require the addition of new ingredients." *Id.* Against this backdrop of Bayer equally raising the prices of all its vitamins, Bayer's internal trade rationale is insufficient to support Plaintiff's claim that the false prostate benefit advertizing impacted the Men's Health vitamins pricing.

The second item of evidence Godec and the class offer is the opinion of putative damages expert Jeffrey Firestone, who opines that "the economic damages incurred by Plaintiff Class under the refund of price premium methodology for the period 2007 to 2009 . . . is $698,071." [Doc. 137-1.][3/] Bayer has moved to exclude Firestone's testimony and report on the ground that it is not reliable and therefore irrelevant. *See* [Doc. 155]; Fed. R. Evid. 702. Though the Court reserves ruling on the admissibility of Firestone's testimony, it agrees with Bayer that Firestone's methodology appears to have at least one serious flaw. In particular, Firestone does not appear to have calculated the value of the prostate-health promise Bayer allegedly made but did not deliver.

As the Court has previously explained, the usual measure of damages in a breach-of-express-warranty case in Ohio (and the proper measure of damages in this case) is the difference between the value of the product as represented and received. Here, Godec says the Men's Health vitamins were represented to promote prostate health.

Firestone purports to compute the difference in the value of the vitamins as represented from the vitamins as delivered with respect to the Men's Health vitamins by comparing the price of those vitamins with the price of other vitamins from the time periods during which the Men's Health

---

[3/]This figure includes damages for claims associated with another Bayer product—One-A-Day Men's 50+ Advantage—that the Court has not certified for class treatment. Accordingly, the "price premium" damages Firestone calculates are somewhat overstated for the purposes of this litigation.

-6-

Case No. 1:10-CV-224
Gwin, J.

vitamins were sold with a prostate-health claim. [Doc. 137-1, at 5 ("In order to determine what price premium, if any, existed when comparing the One-A-Day products to its competitors, we analyzed the IRI Service Bureau pricing data for the years 2007 to 2009. . . . [W]e calculated the difference between the One-A-Day price and the price of the comparable competitor products for that year.").] But Firestone's analysis simply assumes that the industry pricing data on which he relied ("the IRI Service Bureau pricing data") reflects the prices of vitamins that are indeed "comparable competitor" products to Bayer's Men's Health. *Id.* The Court thinks it fairly plain that the way to determine whether Bayer charged a premium for its prostate claim is to compare the price of Men's Health vitamins (which made a prostate-health claim) to the price of *comparable* vitamins that did not make the claim. Firestone has apparently not done this. *See* [Doc. 155-1, at 132:19-25 ("Q: I see. So you are really not trying to isolate the value of the prostate claim in this measure of damages; is that correct? A. That's correct. I'm comparing the relative prices of the Men's Vitamins for One-A-Day versus the competitors."). For this reason, the Court will revisit the admissibility of Firestone's testimony at **8:00 a.m. on Monday, April 16, 2012**, at which time it will conduct a *Daubert* hearing regarding this witness's testimony and address any remaining trial motions.

      The Court cannot at this time conclude that the evidence of damages (or lack of damages) is so one-sided that summary judgment is appropriate. Accordingly, Bayer's motion for summary judgment against the class is, for now, denied. The Court may revisit Bayer's motion following Monday's *Daubert* hearing.

III.

      Bayer also moves for summary judgment against Godec on his individual claim. It first argues that Godec waived any claim for breach of express warranty because (1) he admitted that "[i]f

Case No. 1:10-CV-224
Gwin, J.

[he] had known that the FDA believed that the evidence was inconclusive that selenium and lycopene supported prostate health," he "would not have" purchased the product, [Doc. 149-3, at PageID 5129-5130], even though (2) the vitamins' packaging disclosed that the FDA had found "limited and not conclusive" the evidence that selenium reduces the risk of "certain forms of cancer" and (3) the limitations on the packaging are properly considered part of the express warranty under the Court's class-certification order, *see* [Doc. 146.]

> This argument is overstated. The disclosures on the packaging to which Bayer refers read:
>
> Did you know that prostate cancer is the most frequently diagnosed cancer in men? One-A-Day Men's Formula is a complete multivitamin plus key ingredients to support a healthy prostate* - including Selenium, which emerging research suggests may reduce the risk of prostate cancer.**Some scientific evidence suggests that consumption of Selenium may reduce the risk of certain forms of cancer. However, the FDA has determined that this evidence is limited and not conclusive.
>
> *This statement has not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease.

*See* [Doc. 149, at 21; 152, at 16.][4/] These disclosures do not track Godec's deposition testimony where he admits that he would not have purchased the product had he known that the "FDA believed that the evidence was inconclusive that selenium and lycopene supported prostate health." [Doc. 149-3, at PageID 5130.] Instead, the disclosures indicate that "the FDA has determined that" the "scientific evidence suggest[ing] that consumption of Selenium may reduce the risk of certain forms of cancer . . . is limited and not conclusive." The packaging says nothing about whether the FDA believes that selenium *supports a healthy prostate*. Accordingly, Godec has not waived his claim that Bayer falsely warranted its vitamins to support a healthy prostate.

---

[4/]The single asterisk appears to be a footnote callout for the statements: "This statement has not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease." The double asterisk does not appear to be a footnote callout; there is no footnote indicated by a double asterisk.

Case No. 1:10-CV-224
Gwin, J.

Bayer also argues that Godec has no damages because the vitamin he now purchases (and purchased before he switched to Bayer's Men's Health)—a GNC vitamin—is more expensive than the Men's Health vitamin he bought from Bayer. But as explained both above and in the ruling on class certification (and as Bayer repeatedly argues), the proper measure of damages for a breach of express warranty in Ohio is the value of the product as represented less the value of the product as received. *See* [Doc. 146, at 11; 149, at 23.] "Except perhaps to the extent that it may help in determining the value of Bayer's vitamins as represented or received, the cost of another vitamin is simply not part of the calculus." [Doc. 146, at 11.][5/] Accordingly, summary judgment against Godec is inappropriate.

IV.

For these reasons, the Court **DENIES** Bayer's motion for summary judgment, [Doc. 149].

IT IS SO ORDERED.

Dated: April 10, 2012                           s/      *James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE

---

[5/] As it turns out, the record reflects that some vitamins similar to Men's Health cost more than Men's Health; others cost less than Men's Health. Although the Court at this time reserves ruling on Godec and the class's motion to exclude evidence of Godec's other vitamin purchases, *see* [Doc. 173], it seems obvious that evidence of the cost of other, comparable vitamins, is relevant to the value of Men's Health as represented or received.

-9-