UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
:
GERALD GODEC, On Behalf of Himself : CASE NO. 1:10-CV-224
and All Others Similarly Situated, :
:
Plaintiff, :
:
v. : OPINION & ORDER APPROVING
: SETTLEMENT
BAYER CORPORATION, *et al.*, : [Resolving Doc. No. 255]
:
:
Defendants. :
:
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this class action, Plaintiff Gerald Godec alleges that Defendants Bayer Corporation and Bayer Healthcare, LLC, falsely advertised the health benefits of One-A-Day Men's Health Formula multivitamins. The parties have entered into a settlement that provides monetary relief to class members, and Plaintiff now seek final approval of that settlement.[1] Defendant Bayer does not object to approval of the settlement.[2]

Under Rule 23(e) of the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." To approve the settlement, this Court must be satisfied that the settlement is "fair,

---

[1] Doc. 255.
[2] Doc. 269.

-1-

Case No. 1:10-CV-224
Gwin, J.

reasonable, and adequate."[3] On February 22, 2013, this Court conducted a final fairness hearing, during which Plaintiff's counsel was unable to provide the court with information on the nature, scope, or amount of the fees requested. It also became evident that some of the requested fees were actually for similar litigation currently pending in California.[4] This Court adjourned the hearing, though not before requesting further documentation from Plaintiff's counsel.

The terms of the settlement are as follows: a $300,000 non-reversionary fund will be created to reimburse class members, pay the notice and settlement administration costs, pay Plaintiff's attorney's fees and costs, and provide an incentive award to Plaintiff. Plaintiff requests fees in the amount of 25% of the settlement fund, or $75,000, as well as $107,004.59 in costs. Plaintiff further requests an incentive award of $2,500. Any remaining funds shall be provided to the Prostate Cancer Foundation with a specific earmark for use in Ohio.

## I. The Settlement

In assessing whether a settlement is fair, reasonable, and adequate, this Court must consider the following factors:

> (1) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement;
> (2) the risks, expense, and delay of further litigation;
> (3) the judgment of experienced counsel who have competently evaluated the strength of their proofs;
> (4) the amount of discovery completed and the character of the evidence uncovered;
> (5) whether the settlement is fair to the unnamed Class members;
> (6) objections raised by Class members;
> (7) whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and

---

[3] Fed. R. Civ. P. 23(e)(2).
[4] Doc. 261.

Case No. 1:10-CV-224
Gwin, J.

(8) whether the settlement is consistent with the public interest.[5]

This Court may consider only those factors relevant to this settlement.[6] Further, the Court evaluates the proposed settlement terms in light of the general federal policy favoring the settlement of class actions.[7]

Having considered the relevant factors, this Court finds that the agreed-to settlement is fair. The parties have outlined a comprehensive manner to submit claims that balances fairness and accuracy. That the procedure may exclude some class members unable to produce proof of procedure is a necessary consequence of this type of settlement. Additionally, the mechanism to prove purchase is not onerous. Although Plaintiff's counsel stated at the final fairness hearing that class members would need to produce either the receipt or the (many years old) vitamin bottle, the record belies that suggestion. Rather, as the website for the claim form demonstrates, a claimant may "attach valid proof of purchase (for example, receipt or credit card billing statement)" to substantiate his claim.[8]

The settlement also provides for savings in terms of time, cost, and outcome. The settlement's structure makes likely that affected class members may seek compensation for the full amount of their injury. Were this litigation to proceed further, Defendant Bayer—faced with similar litigation elsewhere—would likely appeal any adverse outcome. Doing so would result in a lengthy delay to class members without much in the way of upside. Perhaps the only persons benefitted by continued litigation would be the parties' counsel, all of whom request approval of the settlement.

---

[5] *UAW v. GM* 2006 WL 891151 (E.D. Mich. 2006).
[6] *IUE-CWA v. GM*, 238 F.R.D. 583, 594-95 (E.D. Mich. 2006).
[7] *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers*, 803 F.2d 878, 880 (6th Cir. 1986) (per curiam).
[8] *See* https://secure.gcginc.com/BYR/ (last visited March 14, 2013).

Case No. 1:10-CV-224
Gwin, J.

This Court therefore finds that "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued."[9]

## II. The Fees

"It is within the district court's discretion to determine the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them."[10] Moreover, an award of attorneys' fees in common fund cases need only be "reasonable under the circumstances."[11]

Courts typically employ one of two methods in analyzing a request for attorneys' fees—the lodestar analysis or the percentage of the fund analysis.[12] To determine the "lodestar" figure, the Court multiplies the proven number of hours reasonably expended on the litigation by a reasonable hourly rate.[13] The Court may then adjust the lodestar figure up or down based on a number of factors designed to account for case-specific circumstances.[14]

In contrast, under the percentage of the fund method, the court simply determines a percentage of the settlement to award the class counsel, based on several case-specific factors.[15] Often, however, courts employ both methods, using each as a "cross-check" against on the other.[16]

Here, there is little doubt that a lodestar approach would yield fees in excess of that

---

[9] *UAW v. GM*, 2006 WL 891151 at *15 (quoting Manual for Complex Litig. § 30.42 at 238 (3d ed. 1995).
[10] *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir.1996).
[11] *Rawlings v. Prudential–Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir.1993).
[12] *Id.*; see also *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766 (N.D. Ohio 2010).
[13] *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999).
[14] *Id.* at 471–72.
[15] *Rawlings*, 9 F.3d at 516.
[16] *See, e.g.*, *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F.Supp.2d 907, 923 (N.D. Ohio 2003); see also *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261 (S.D.Ohio 1996), *affirmed*, 102 F.3d 777 (6th Cir.1996).

Case No. 1:10-CV-224
Gwin, J.

requested, and in all likelihood, in excess of the settlement fund itself. Plaintiff filed the complaint in February 2010, is represented by four law firms and more than ten attorneys, and a cursory review of the docket reveals that the Court has issued at least seven substantive opinions in this case. The Court will therefore analyze the fees under the percentage of the fund method alone.

The Sixth Circuit established the relevant factors for determining a reasonable fee award in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir.1974). The *Ramey* factors include: "1) the value of the benefit rendered . . . 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis [the lodestar cross-check], 5) the complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides."[17] There is no formula for weighing these factors. Rather, this Court must be mindful to the facts and circumstances of this specific case.[18]

A.  *Value of the benefit received*

The first factor requires this Court to consider the benefit of the settlement to the Class. Among courts in the Sixth Circuit, this factor is widely regarded the most important.[19] Based on representations by both parties at the final fairness hearing, there would be no difficulty in fully compensating members of the class, provided that the class member can provide the requisite proofs of purchase. Further, no objections were levied to proposed settlement. Given the constraints of the action—compensating retail consumers who purchased vitamin bottles years ago—this factor weighs

---

[17] *508 F.2d at 1196*.

[18] *Rawlings, 9 F.3d at 516*.

[19] *See, e.g.*, *In re Cardinal Health Inc. Securities Litigation*, 528 F. Supp. 2d 752, 756 (S.D. Ohio 2007); *Basile v. Merrill Lynch, Pierce, Fenner & Smith*, 640 F. Supp. 697, 700 (S.D. Ohio 1986) (finding that the value of the benefit rendered is the first factor listed because it is the most important one).

Case No. 1:10-CV-224
Gwin, J.

in favor of approval.

B. *The public's interest*

This Court must weigh the need to encourage counsel to accept worthwhile assignments while discouraging excessive compensation at the class expense. Unlike in other actions where the lawyer's compensation has an actual impact on the class members, the compensation here will affect only the *cy pres* award. That is, that given the small class size, it is exceedingly unlikely that the award of costs and fees in their entirety would diminish any class member's recovery. As of the end of January 2013, only 3310 persons had visited the online claim site, and only 81 persons had submitted claim forms.[20] Even assuming a generous $50 average award, the fund, after paying all requested fees and costs, could still reimburse over 2300 claimants. It is exceedingly unlikely that this many persons would submit claims, so this factor too weighs in favor of the fee request.

C. *Contingent fee*

Plaintiff's counsel represents, and Defendant does not state otherwise, that it took this case on a contingent fee basis. It therefore bore the entire risk of non-recovery. This too weighs in favor of the fee request.

D. *Value of the services*

Under this fourth factor, the Court examines the value of the attorneys' services on an hourly basis by performing a cross-check with the lodestar method. As already mentioned, any lodestar analysis would yield hourly figures far in excess of the $75,000 fee award, and most likely in excess of the $300,000 overall settlement.

E. *Complexity of the litigation*

---

[20] Doc. 269-3.

Case No. 1:10-CV-224
Gwin, J.

Although Plaintiff's counsel says that the instant case was particularly complex, this Court is not persuaded that this case is any more complex than the average class action. That the subject-matter concerns science is not enough, by itself, to make the litigation complex. Counsel provides no argument in support of this contention. This factor does not weigh in favor of approval.

*F. Professional skill and standing of counsel*

Plaintiff's counsel performed adequately throughout the duration of the proceedings. This Court finds that there is little question that its efforts through the duration of this litigation was of a quality exceeding the requested fees.

Given that most of the *Raney* factors weigh in favor of approval, this Court will approve Plaintiff counsel's request for 25% of the settlement, or $75,000, in fees.

### III. The Costs

In support of its motion for approval of the settlement, Plaintiff submitted to the Court its costs in connection with this litigation. Plaintiff requested $36,411.73 for Attorney Peca's firm, $31,612.89 for Attorney Piscitelli's firm, $26,437.24 for Attorney Ryan's firm, and $18,354.92 for Mr. O'Reardon's firm, for a total of $112,816.78 in costs. As already mentioned, during the final fairness hearing, Plaintiff's counsel was unable to explain how it arrived at these numbers and whether they included costs associated with the California litigation. This Court requested supplemental documentation, which the parties have provided. Defendant Bayer has no objection to any award of fees below $75,000.[21]

After resubmitting its fees to take into account the California litigation, Plaintiff now requests $38,588.08 for Attorney Peca's firm, $23,877.41 for Attorney Piscitelli's firm, $26,184.18 for

---

[21] Doc. 269.

-7-

Case No. 1:10-CV-224
Gwin, J.

Attorney Ryan's firm, and $18,354.92 for Attorney O'Reardon's firm, for a total of $107,004.59. This marks a decrease of over $5,000 from the original submission. Plaintiff states that these amounts are "reasonable and necessary" costs.[22]

Having reviewed the supporting documentation, this Court will approve the request with minor changes. The Court notes that both Attorney Piscitelli[23] and Attorney Ryan[24] booked first class tickets, the former multiple times. This Court finds that such an expenditure is neither necessary nor reasonable, and therefore reduces the requested amount in travel reimbursements by one quarter. Therefore, the Court awards $38,588.08 to Attorney Peca's firm, $22,652.69 to Attorney Piscitelli's firm, $26,002.38 to Attorney Ryan's firm, and $18,354.92 to Attorney O'Reardon's firm, for a total of $105,598.07 in costs.

## IV. The Incentive Award

Plaintiff request an incentive award of $2,500. "Courts within the Sixth Circuit . . . recognize that, in common fund cases and where the settlement agreement provides for incentive award, class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone."[25] Plaintiff supports his request by saying that he had to miss work to attend depositions in San Diego, and that he was intimately involved in the prosecution of this case. Defendant Bayer does not object. Accordingly, the Court grants the request for an incentive award of $2,500 to Plaintiff Godec.

---

[22] Doc. 255.
[23] Doc. 267-1, at 29, 32.
[24] Doc. 266-3, at 150.
[25] *Lonardo*, 706 F. Supp. 2d at 787.

Case No. 1:10-CV-224
Gwin, J.

## V. Conclusion

The Settlement Agreement is hereby approved, subject to the restrictions stated in Part III of this opinion, and confirmed as being fair, reasonable, and adequate. The parties are hereby directed to perform the Settlement Agreement in accordance with its terms and this opinion. Plaintiff Godec's claims, including the claims of the Class, are hereby DISMISSED with prejudice pursuant to Rule 41(a)(2) and Rule 23(e) of the Federal Rules of Civil Procedure. The Court retains jurisdiction over the settlement of this case and may enter additional orders to effectuate the fair and orderly administration of the settlement and the Court's judgment as may from time to time be appropriate.

IT IS SO ORDERED.

Dated: March 14, 2012                     s/     *James S. Gwin*
                                          JAMES S. GWIN
                                          UNITED STATES DISTRICT JUDGE